604 A.2d 506

Carl A. JENKINS

v.

CAMERON & HORNBOSTEL.

No. 1069, Sept. Term, 1991.

Court of Special Appeals of Maryland.

April 10, 1992.

**318**

Joseph J. Trepel (Hannon & Trepel and Carl A. Jenkins, on the brief), Silver Spring, for appellant.

Duncan H. Cameron (Paul S. Haar and Cameron & Hornbostel, Washington, D.C. and William Nelson, Bethesda, on the brief), for appellee.

Argued before ALPERT, CATHELL, and DAVIS, JJ.

DAVIS, Judge.

The appellant, a member of the Maryland Bar, appeals an award of sanctions against him for abusive discovery. He presents the following issues for our review:

1. Whether the trial court erred in finding that the appellant's discovery motions were violative of the court's Protective Order and in awarding sanctions against the appellant.

2. Whether the trial court abused its discretion in ruling that the appellant violated Maryland Rule 1–341 and in awarding attorney's fees, as a matter of law.

## Facts

The defendant (Husband) retained the appellant as his attorney in a contested divorce proceeding. The underlying divorce proceedings had been at issue for approximately fifteen months before the appellant entered his appearance on behalf of the Husband. The plaintiff (Wife) had filed simultaneously a complaint for divorce and a Petition for Protective Order alleging fraud, bigamy, alcohol and drug abuse on the part of Husband, and seeking a Use and Possession Order and a Domestic Stay Away Order. The Wife also filed Interrogatories, Request for Production of Documents, and a Request for Admissions. As a result of these filings, Wife was awarded a temporary *ex parte* protective order against physical abuse.

The trial judge, on February 5, 1990, ordered appellant's predecessor to comply with plaintiff's request for Production of Documents and Admissions of Fact within fifteen days. If he failed to comply, the matters contained in the Request for Admissions of Fact would be deemed admitted, the defendant's pleadings would be stricken, the counter-complaint dismissed, and judgment by default would be entered. On February 20, 1990, the defendant responded. After acrimonious exchanges in the pleadings concerning defendant's alleged failure to comply with discovery requests, defendant's counsel, on October 10, 1990, simultaneously filed a Request for Admissions of Fact containing

seventy-six items and a set of Interrogatories containing thirty questions. Wife responded on November 6, 1990 to Husband's Request for Admissions; and, on November 12, 1990, Wife responded to Interrogatories which had been propounded by Husband. On January 8, 1991, Husband's counsel filed Requests for Production of Documents and, on January 17, 1991, submitted his Motion to Compel Discovery and Order Admission of Facts.

Wife complained, in her Opposition to Motion to Compel filed on January 22, 1991, that she had responded to "defendant's voluminous requests for admissions" on November 6, 1990 and answered interrogatories on November 12, 1990. Her pleading further asserts that, when counsel protested that he had not received the documents and could not find them in the court files, her counsel forwarded another copy to Husband's counsel and the court. On January 28, 1991, Wife filed her response for Production of Documents. On March 13, 1991, the lower court granted the motion for Husband's counsel to strike his appearance and, on February 13, 1991, appellant entered his appearance. The March 11, 1990 [1] trial date was continued and ordered rescheduled by the Assignment Office. After the entry of appellant's appearance, he requested and was granted a continuance, in order to allow him time to prepare.

On or about March 1, 1991, Wife filed a second Petition for Protective Order, seeking relief from Husband's alleged abusive discovery. The petition asserted that Husband attempted to overwhelm Wife with unnecessary requests for discovery that had been answered previously. On March 4, 1991, Husband was served with the second protective order as well as Wife's discovery requests. Husband alleged that, although he had complied with all of Wife's discovery requests, she had failed to answer any of his requests. Husband then filed two Motions to Compel Dis-

---

1. The record extract indicates the scheduled trial date was March 11, 1990. Apparently, the court's order granting the continuance is in error and should read "March 11, 1991."

covery (one compelling the Production of Documents and another compelling the answering of Interrogatories). On February 26, 1991, the appellant had filed a notice to take the deposition of Wife and requested that Wife bring with her, among other things: (1) all records previously requested in Defendant's Request for Production of Documents, (2) all documents received since the *pendente lite* hearing, and (3) supplemental responses to Interrogatories and Requests for Production of Documents.

On April 9, 1991, the trial court denied both of Husband's motions and granted Wife's second Petition for Protective Order, ordering "that [Wife] be excused from answering all further interrogatories or requests for production from [Husband]" and further ordering "that [Husband] is barred from engaging in any further abusive discovery, including further interrogatories and requests for production from [Wife]."

On or about April 15, 1991, the appellant took the deposition of Wife and inquired as to whether she had brought the requested documents. She replied that she had not, and the deposition continued. The appellant subsequently filed a Motion to Reconsider the court's second Protective Order. As a part of its Opposition to the Appellant's Motion for Reconsideration, the appellee, on behalf of Wife, also filed a Motion for Sanctions in the form of attorney's fees, citing, as its basis for relief, the appellant's violation of the court's order against "further abusive discovery."

In granting the appellee's Motion for Sanctions, the trial court found that the appellant had attempted to use both the deposition and a separate subpoena *duces tecum* for a Master's hearing to obtain documents from Wife, in direct violation of the court's protective order against further requests for documents.

With respect to the appellant's Motion for Reconsideration, the court noted that the appellant had filed the motion on Thursday, April 25, 1991 and, as previously mentioned, served Wife with a subpoena *duces tecum* on Friday, April

26, 1991 for a Monday, April 29, 1991 Master's hearing. The court also found that the appellant purposely did not send the court a copy of the motion, in order that he might have the opportunity to argue at the Master's hearing that there was currently a Motion for Reconsideration pending (since the court could not rule on a motion it had not received), in hopes of swaying the Domestic Master. The trial court found that the appellant acted with a total disregard for the order of the court and found that his actions amounted to "abusive discovery." Consequently, the court awarded sanctions in the amount of $3,500.00, which represented the cost to Wife associated with her response to appellant's discovery requests, the appellant's Motion to Compel, and Wife's Motion for Protective Order.

## Legal Analysis

Maryland Rule 1–341 states:

> In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.

■ Sanctions, however, should not be imposed arbitrarily, but are "an extraordinary remedy [reserved for] *intentional misconduct." Talley v. Talley*, 317 Md. 428, 438, 564 A.2d 777 (1989) (emphasis added). Moreover, sanctions should not be imposed simply because a cause of action avows a "misconceived legal basis upon which relief is sought," *Black v. Fox Hills North Community Ass'n, Inc.*, 90 Md.App. 75, 83, 599 A.2d 1228 (1992), quoting *Hess v. Chalmers*, 33 Md.App. 541, 545, 365 A.2d 294 (1976), or urges a legal theory which was not adopted by the court, *Black* [90 Md.App.] at 83, 599 A.2d 1228, citing *Dixon v. DeLance*, 84 Md.App. 441, 579 A.2d 1213 (1990). As Judge Moylan stated in *Black*, "Rule 1–341 sanctions should be

imposed only when there is a clear [and] serious abuse of judicial process." *Id.* at 83, 599 A.2d 1228.

Before imposing sanctions under Rule 1–341, the trial court must make an evidentiary finding that the subject pleading either (1) was filed in bad faith *or* (2) lacked substantial justification. *Johnson v. Baker,* 84 Md.App. 521, 528, 581 A.2d 48 (1990); *Legal Aid Bureau, Inc. v. Bishop's Garth Associates Ltd. Partnership,* 75 Md.App. 214, 220, 540 A.2d 1175 (1988). On appeal, the court's evidentiary finding will be reviewed under a clearly erroneous standard.

Judge Alpert, writing for this Court in *Johnson, supra,* iterated that "conduct lacks substantial justification when there is no basis in law and/or fact to support the plaintiff's claim against the defendants who seek fees and costs." *Id.* [84 Md.App.] at 529, 581 A.2d 48. As to bad faith, the Court of Appeals has defined the term as it applies to Rule 1–341 in *Inlet Associates v. Harrison Inn,* 324 Md. 254, 268, 596 A.2d 1049 (1991):

> "In bad faith" means vexatiously, for the purpose of harassment or unreasonable delay, or for other improper reasons. *See Roadway Exp. Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455 [2464], 65 L.Ed.2d 488, 501 (1980); *Johnson v. Baker,* 84 Md.App. 521, 581 A.2d 48, *cert. denied,* 322 Md. 131, 586 A.2d 13 (1990).

In *Johnson v. Baker, supra,* at page 531, 581 A.2d 48 (citations omitted), this Court wrote:

> Previously, we had said that "[u]nder Rule 1–341, 'bad faith,' in some circumstances, may include an action taken for the purpose of causing an unjustifiable delay." Thus, "[t]he bad-faith exception for the award of attorney's fees is not restricted to cases where the action is filed in bad faith ... but may be found ... in the conduct of the litigation." Generally, the "[m]isuse of a pleading ... amounts to bad faith."

In the case before us, the trial court found that the appellant engaged in "intentional misconduct" and violated

the trial court's protective order by (1) taking Wife's deposition as a vehicle to request production of documents covered by the court's protective order, (2) issuing a subpoena *duces tecum* to Wife, and (3) filing his Motion for Reconsideration in bad faith. We hold that the trial court's finding that appellant engaged in abusive discovery and the court's award of sanctions against the appellant were not clearly erroneous and thus affirm.

### Violation of Protective Order

■ On April 9, 1991, as noted, the court granted plaintiff's motion for a protective order. The order specifically stated that the court had "found that Defendant and his counsel have engaged in abusive discovery" and further barred defendant "from engaging in any further abusive discovery, including further interrogatories and requests for production from Plaintiff." Although appellant now argues that he did not believe that the court's ruling prevented him from seeking the same documents from plaintiff by deposition, in his motion for reconsideration of the protective order filed on April 25, 1991, he maintained that the April 9 protective order barred the defendant from "engaging in any further discovery, including Production of Documents...."

On May 16, 1991, appellant moved for a continuance of the hearing on the motion to reconsider and on the plaintiff's motion for sanctions. Thereafter, on May 20, 1992, when he appeared before the trial judge at the sanctions hearing, appellant withdrew his motion for continuance. Appellant was aware that he had until May 17, 1991, to respond to plaintiff's motion for sanctions. Additionally, appellant's memorandum in response to plaintiff's motion for sanctions admits that he subpoenaed documents possessed by plaintiff from third parties *and* he nevertheless issued a subpoena *duces tecum* for the same documents to be produced at trial.

On April 29–30, 1992, at the hearing on the merits, when plaintiff was cross-examined on the issue of the court's

protective order, plaintiff's counsel pointed out that the requested documents had been denied per the protective order. When the Master inquired of appellant why he wanted the records and asked whether "these are the same documents that have basically been the subject of a protective order with [the trial judge]," appellant replied, "Some of them yes and some of them no." Appellant later conceded to the lower court that they were the same.

Appellant argued at the merits hearing that the requested documents were still an "open" question:

[APPELLANT]: ... I understand that [plaintiff's counsel] is saying that he has provided to me everything that he thinks is relevant, but what I am suggesting is that I do not have the ability to pursue this case.

THE COURT: Well, as far as I know, there are no issues before me today having anything to do with that.

[APPELLANT]: There is a motion to reconsider [the trial judge's] denial of the request for documents.

THE COURT: That has not been raised to me.

[PLAINTIFF'S COUNSEL]: I have never seen it, Your Honor.

[APPELLANT]: I understand that. It is in the file, and I didn't expect it to be reached today, but *for the record I think that it is still open on the question of [the judge's] denial of the request for documents.*

THE COURT: I think it is going to become moot very quickly if this is a trial on the merits, don't you?

[APPELLANT]: Well, if in fact we conclude it in the next two days.

(Emphasis supplied.) The Master was unpersuaded that the documents were relevant. The lower court opined at the sanctions hearing that appellant filed his motion for reconsideration of the protective order with the intention of going to trial with the production of documents still an open question.

Ultimately, at the sanctions hearing, the court found that, after becoming counsel of record for defendant, appellant had been guilty of abusive process:

[APPELLANT]: Well, as I understand it, the only things that I have filed since I came on board were the two motions for compelling—

THE COURT: *And questioned everything that your predecessor did. I have read the file. You have gone back over that. You have gone over the material he did. You have covered that. You have sent that to them in addition to everything else. It is abusive. It is beyond the pale.*

*I meant it when I said don't do it any more and I just said including interrogatories and including motion for production of documents. I said don't do it in discovery and you did it on a deposition,* didn't you?

(Emphasis supplied.)

Thereafter, the court found that the filing of the motion for reconsideration was abusive process. At the sanctions hearing, when the lower court attempted to ascertain appellant's purpose in filing the motion for reconsideration of the protective order and in not seeking a ruling prior to the merits hearing, the explanation offered was found to be unsatisfactory. The trial judge made a factual finding that appellant had not notified the court of the motion, had made no attempt to get a ruling, and had intended to go to the merits hearing with a motion still outstanding:

THE COURT: ... I am absolutely convinced, and I think anyone who reads this record will be convinced, that Counsel abused process by filing it with the full intent that it not be acted upon and that it be—so that he could argue that there was a motion for reconsideration outstanding.

Next, the trial judge found that there was no basis on which to reconsider the protective order.

THE COURT: ... I find no basis to reconsider the original order. I am convinced that if Counsel had

sought a ruling, Counsel would have had one prior to the hearing. Counsel did not seek any ruling, just simply filed it a few days before the hearing and let it lay there. That in itself was an abuse of the Court process because it was used for a purpose other than what process is designed to do.

Finally, the court determined that appellant violated the April 9 protective order:

THE COURT: Two other instances [of abuse] that I referred to were the orders of this Court. The order of this Court filed on April 11 was directly violated by Counsel. The actions by Counsel have been abusive in the filings made which led to the original order.

The order was specific about what should be done and could be done. The deposition that followed followed [sic] the order. Counsel was aware of the order, yet sought to use the deposition as a mechanism.

The order was very clear. It prohibited all discovery. That includes depositions. Still, the very same discovery was sought to be used and enforced in that deposition.

. . . .

It was violated at the deposition. It may have been violated at the Master's hearing, directly violated. The process was used in a way that it is not designed and in total abuse of the Maryland Rules of Procedure and the rules of this Court.

Thus, the court found that appellant had violated the court's order twice. The trial judge considered issuing an order to show cause why appellant should not be held in contempt of court. The court, however, indicated that it would refer the matter of appellant's violations of the court's orders to the Attorney Grievance Commission.

The court imposed sanctions of $3,500 on appellant, because it found, on the evidence before it, that the amount awarded had been expended by plaintiff's counsel "in connection with response to voluminous discovery requests and

abusive discovery by the conduct that lacks substantial justification."

Before a court imposes sanctions, it must make an evidentiary finding of "bad faith" or "lack of substantial justification." *Johnson v. Baker*, 84 Md.App. at 528, 581 A.2d 48. "The existence of bad faith or lack of substantial justification is a question of fact subject to a 'clearly erroneous' standard of review." *Id.*, citing *Legal Aid Bureau, Inc. v. Bishop's Garth Associates Ltd. Partnership*, 75 Md.App. 214, 220–21, 540 A.2d 1175 (1988), and *Century I Condominium Association, Inc. v. Plaza Condominium Joint Venture*, 64 Md.Ap. 107, 117, 494 A.2d 713 (1985). Moreover, the *Johnson* court stated that

> [o]n appeal, the appellate court reviews the propriety of the sanction imposed under an abuse of discretion standard and will not disturb the sanction unless the court abused its discretion.

*Johnson*, 84 Md.App. at 529, 581 A.2d 48.

■ Thus, the existence of "bad faith" or "lack of substantial justification" is a question of fact, the determination of which may be reversed only if it is "clearly erroneous" and there has been an abuse of discretion by the trial court. Appellant contends that "the Protective Order in question is not specific on the issue of depositions." He insists that if taking the Wife's deposition is abusive discovery, such a determination is "in violation of the United States Constitution ... [and] the Maryland Declaration of Rights and Rule 2–411."

■ We disagree. Rule 2–401 defines discovery to include *depositions*, interrogatories, and the production of documents. As noted above, the court's motion barred all further abusive discovery; and because depositions are included, the appellant was in clear violation of the court's order. Had the appellant simply withdrawn the subpoena or otherwise informed Wife not to bring the requested documents because of the court's order, the argument could have been made that the court's order was sufficiently

vague to allow the appellant to depose Wife. Appellant, however, sought to pursue further discovery on the occasion of the scheduled deposition.

It was not the deposition *per se* that was abusive discovery. It was the fact that the appellant asked Wife to produce the same documents which had been specifically excluded in the denial of appellant's Second Motion to Compel Production of Documents by Plaintiff.[2] Thus, it would seem, and the trial court so found, that the appellant's purpose in deposing Wife was an attempt to further pursue his quest for production of documents and to circumvent the court's protective order. On April 24, 1991, the appellant subpoenaed Wife to appear at an April 29, 1991 Master's Hearing and again requested that Wife bring with her documents that had been excluded when the appellant's Second Motion to Compel Production was denied and in the court's Protective Order of April 11, 1991. From these two instances, the trial court found, and we concur, that the appellant engaged in intentional misconduct and acted in direct contravention of the trial court's order.

### Subpoena *Duces Tecum*

■ The record also supports the lower court's finding that the appellant violated its Order by issuing a subpoena

---

2. At the hearing on the Motion for Sanctions, the appellant and the court had the following exchange:

THE COURT: You knew about the order, didn't you?

[APPELLANT]: Yes, sir.

THE COURT: You were under that order, weren't you?

[APPELLANT]: Yes, sir.

THE COURT: Did you try to get those documents from the Plaintiff notwithstanding my order?

[APPELLANT]: I asked her if she brought the documents and—

THE COURT: Were those the very documents that I had just ruled on?

[APPELLANT]: Yes.

THE COURT: Then how come you are not in direct violation of my order and in contempt of Court?

[APPELLANT]: Because I asked her if she brought the documents in reference to the notice of deposition and she said no and that was the end of it.

*duces tecum* to Wife. The subpoena was issued on April 26, 1991, a full fifteen days after the Court's protective order and specifically instructed Wife to bring: 1) financial statements for the past three years; 2) wage stubs for the past year; 3) copies of her three most recent State and Federal tax returns; 4) income statements for the past three years; 5) monthly statements, check registers and cancelled checks for the past two years; 6) all bank books, passbooks, and bank loan statements for the past three years; and 7) all monthly statements and receipts from any credit card account for the past two years.

It was precisely these documents which the appellant sought in his *two* Motions to Compel Discovery, both of which were denied, and his Notice of Deposition *Duces Tecum* of Wife, which were found by the trial court to be in violation of its protective order. At oral argument, the appellant maintained that a subpoena for trial could not be construed as discovery and thus could not be a violation of the court's order. Were this an isolated incident, appellant's argument might have merit. In light of the appellant's other discovery abuses, we find that the issuance of the subpoena *duces tecum* in this case was simply another attempt by the appellant to circumvent the trial court's protective order.

## Motion for Reconsideration

The court also determined that appellant's Motion for Reconsideration of Protective Order was filed without substantial justification. As stated above, the appellant filed the motion on Thursday, April 25, 1991 and served Wife with a subpoena *duces tecum* on Friday, April 26, 1991 for the Master's hearing on Monday, April 29, 1991. The appellant did not send the court a copy of the motion. Though the appellant argued that his failure to inform the court of his motion was simply an oversight on his part, the trial court found that it was an abuse of the judicial process to file a motion, not to resolve the issue, but instead to have another theory to argue at the hearing before the Master.

If the appellant's desire to have the court reconsider the protective order had indeed been in earnest, we believe he would have taken all steps necessary to ensure that the court received a copy of the motion, which ostensibly the trial court would have ruled on promptly. The court properly determined that the failure to provide it with a copy of the motion was consistent with the appellant's prior attempts to circumvent the court's discovery rulings.

### Scope of Discovery

█ The appellant complains that under existing discovery rules the Husband "clearly had a right to ask for the requested answers and documents." Citing Md.Rules 2–431 and 2–432, the appellant argues that he followed all procedural requirements pertinent to the filing of his objections to Wife's failure to produce the documents. The appellant further contends that his Motion to Reconsider, by definition, cannot be abusive because it is simply a proposal that the court take a certain course of action.

We agree with the appellant that, ordinarily, the scope of discovery is quite expansive, allowing for the discovery of almost anything. We further agree that a motion, in and of itself, is not normally abusive because, as the appellant states, it is simply a proposal to the court. We further agree that it is not the function of sanctions to punish legitimate advocacy or discovery. *Legal Aid Bureau v. Farmer*, 74 Md.App. 707, 539 A.2d 1173 (1988), *citing Dent v. Simmons*, 61 Md.App. 122, 485 A.2d 270 (1985). Finally, we note that the appellant did comply with the applicable rules on discovery in filing his motions and various requests for documents. Nevertheless, when the trial court perceives an abuse of the discovery process, on the part of either party, the court has the authority to restrict the scope of discovery to prevent the abuse. In the present case, the thrust of the trial court's finding of abusive discovery was that the appellant had made requests for all of the same documents as his predecessor had requested and received.

■ From the beginning of the proceedings, Husband filed five discovery requests. Husband sought this information by way of Notice to Take Deposition *duces tecum*, the subpoena *duces tecum*, Request for Admission of Facts, Request for Production of Documents, and Interrogatories. All of Husband's discovery pleadings were promptly answered by Wife. In those requests that required the production of documents, Husband requested precisely the same documents each time.[3] After Wife had answered Husband's requests, appellant filed two separate Motions to Compel Production, seeking the same documents. In engaging in such overtly duplicitous discovery, the court found abuse. When judged under the *Johnson* test, we find that the appellant's attempted discovery was in bad faith and lacked substantial justification because he already had possession of the documents that he sought to discover.

## Improper Sanctions

The appellant next contends that sanctions were improper given that the court (1) improperly applied judicial hindsight, (2) awarded damages retroactively, and (3) failed to inquire into the appellant's ability to pay the sanction.

The concept of judicial hindsight applies to a situation in which counsel employs novel legal arguments in light of later developments. That concept applies, the appellant contends, because the trial court based its ruling on his Motion for Reconsideration on what the court would have done had the appellant brought the filing of the motion to the court's attention. We disagree. From our review of the record, the court based its ruling upon the appellant's violation of the court's protective order. The court stated:

... I find that $3500 in legal fees and expenses [is] in connection with response to voluminous discovery requests and abusive discovery by the Defendant ... direct-

---

**3.** See the section under the heading Subpoena *Duces Tecum* for a listing of requested documents.

ly instituted by Attorney Carl A. Jenkins, Esquire and for which Mr. Jenkins is responsible.

The other matters that I have referred to are also matters which in large part I am looking at because I have to look at the overall picture and there is more than abusive discovery.

There are violations of Court orders and abuse of Court process, all directly related to Attorney Carl A. Jenkins for which future action may be taken by this Court. . . .

This Court assesses in fees $3500 to be paid by Attorney Carl A. Jenkins, Esquire to the Plaintiff in this case.

[Plaintiff's counsel], you are asked to prepare an order which will assess those fees and which will deny the motion for reconsideration.

The appellant next contends that the trial court applied damages retroactively by allegedly assessing fees from the beginning of discovery, instead of limiting fees for the cost of defending the Motion to Reconsider. The appellant further avers that the award of fees was improper under the doctrine of *res judicata,* because Wife had previously requested fees in a Motion to Compel Discovery, which request was denied.

First, as we shall discuss under the heading Abuse of Discretion, *infra,* the record shows that the trial court did not assess discovery fees from the beginning of discovery, but from the date of the court's protective order, which is fitting given that the violation of the order precipitated the sanctions.

Second, we find that Wife's claim for attorney's fees is not barred by *res judicata.* For the doctrine of *res judicata* to apply, the appellant must show:

1) That the issue in the current action is identical to the one determined in the prior adjudication.

2) That the parties in the current action are the same or in privity with the parties in the earlier dispute.

3) That there was a *valid, final judgment on the merits* of the issue in the initial action.

*See Lone v. Montgomery County,* 85 Md.App. 477, 490, 584 A.2d 142 (1991); *Nicholson v. Unsatisfied Claim and Judgment Board Fund,* 265 Md. 453, 458, 290 A.2d 384 (1972). In order for the doctrine to be applicable, *all* of the above criteria must be satisfied.

 In the present case, the third criterion—the requirement of a final judgment—is not satisfied because, as the appellant noted, Wife's request for fees was submitted as part of a Motion to Compel Discovery. As the court's ruling on the Motion to Compel Discovery did not constitute a final judgment, *res judicata* does not apply. *Res judicata* is further inapplicable because Wife's claims for fees came within the same proceeding, and the doctrine may be invoked only when there are similar claims raised in two separate proceedings.

Finally, the appellant asserts that the court erred in failing to inquire into the appellant's ability to pay the sanctions imposed. The appellant cites *Needle v. White,* 81 Md.App. 463, 568 A.2d 856 (1990), for the proposition that it may be an abuse of discretion to impose a substantial monetary sanction on a litigant without first determining the financial ability of the litigant to pay the amount assessed.

The appellant submits that the court did not conduct an inquiry "because as a matter of record and common knowledge, appellant had been in private, solo practice for barely two years, and admitted to the Maryland Bar for only four." We are unclear, and the appellant does not explain, how the court's asserted knowledge of the appellant's fledgling private practice controlled or otherwise influenced its decision to inquire.

In any event, our review of *Needle* reveals that the case does indeed stand for the proposition articulated by appellant, but is inapplicable here. The court trial in *Needle* arose from the claims of the former bookkeeper of a law

firm which had prosecuted her unsuccessfully [4] for embezzlement. The firm had contended that their conduct was not so outrageous as to justify an action for intentional infliction of emotional distress. The firm argued that the civil action was in retaliation for criminal charges brought. The bookkeeper, on the other hand, contended the firm's motivation in bringing criminal charges stemmed from its efforts to collect on its employee fidelity insurance policy.

The primary focus in *Needle* was whether substantial justification existed for the firm to initiate civil proceedings. We noted that it may be an abuse of discretion to impose a *substantial* monetary sanction on a *litigant* without first determining the financial ability of the litigant to pay the amount assessed. The trial court, in *Needle*, had ordered the bookkeeper to pay the sum of $121,369.14 and attorneys, Needle and King, to pay the sum of $21,748.00. The award of $3,500 clearly is intended not to punish the appellant, but rather to compensate the plaintiff for the legal costs of responding to frivolous requests for discovery and cannot be said to be unreasonable under the circumstances of the instant case. *Beery v. Maryland Medical Laboratory, Inc.,* 89 Md.App. 81, 99–100, 597 A.2d 516 (1991), citing *U.S. Health, Inc. v. State,* 87 Md.App. 116, 589 A.2d 485, *cert. denied,* 324 Md. 69, 595 A.2d 482 (1991).

Discounting the notion that sanctions are appropriate only when the one sanctioned is the loser, we observed in *Needle,* 81 Md.App. at 479, 568 A.2d 856, "Dilatory tactics, for example, or abusive conduct, or disregard of rulings by the court could result in some form of sanctioning, but there is no allegation of misconduct alleged herein."

Thus, although *Needle* requires that the trial judge determine a litigant's ability to pay before imposing sanctions, more pertinent is the language which supports the rationale

---

**4.** The bookkeeper was acquitted of the criminal charges in a trial before a jury.

that sanctions are appropriate where counsel engage in abusive conduct or disregard rulings by the court.

### Abuse of Discretion

Finally, the appellant argues that the trial court's award of sanctions against the appellant was an abuse of discretion. The appellant more precisely contends that (1) the trial court's award of attorney's fees was not supported by the record, (2) the trial court failed to give the appellant adequate time to prepare, and (3) the amount of the court's award was not adequately documented.

■ As to the first and third contentions, Maryland courts have historically left the determination of the amount of the award under Rule 1–341 to the discretion of the trial judge to find according to his or her "own knowledge of the case and the legal effort and expertise required" and the affidavits of the parties. *Johnson,* 84 Md.App. at 543, 581 A.2d 48, *quoting Century 1 v. Plaza Condo.,* 64 Md.App. at 121–22, 494 A.2d 713. *See also Brady v. Hartford Ins. Co.,* 610 F.Supp. 735 (D.Md.1985). Under the Maryland rules regarding sanctions for abuse of discovery, the primary focus of sanctions is to compensate the party against whom discovery is filed for the cost of complying with frivolous discovery requests. Since compensation is the goal, the test of an appropriate sanction is determined by what constitutes a reasonable amount for counsel fees.

■ In the present case, the appellee provided the court with an itemized list of discovery costs which actually totalled $5,550. The list was submitted in response to the court's request for verification of the exact amount. The appellant argues that because appellee had, in open court, originally given $3,500 as the amount of attorney's fees and then submitted the itemized list with $5,550 as the amount, the court's award of $3,500 is unfounded. A review of the itemized list submitted by the appellee reveals that the

$3,500 figure represents discovery costs from the date of the court's protective order through the hearing on the appellant's Motion to Reconsider and Sanctions.[5]

In any event, in view of the fact that (1) Rule 1–341 does not require that the court articulate precisely the basis for its award, (2) given that the amount of award is historically left to the trial judge's "own knowledge of the case and the legal effort and expertise required," and (3) the appellant did not object to the introduction of the $3,500 fee, we do not find that the amount of the sanction was an abuse of discretion.

 As for the appellant's second contention (that the trial court failed to give the appellant adequate time to prepare), the appellant asserts that his Constitutional due process rights were violated by the court's order to shorten response time. We are persuaded that the appellant was not denied adequate time to prepare for the hearing on his Motion to Reconsider and Sanctions.

The record reflects that the appellant was notified of the rescheduling of the hearing at 5:32 p.m. on Wednesday, May 15, 1991, and that the hearing was rescheduled for a Monday, May 20, 1991 hearing, thus allowing the appellant two work days, in addition to Saturday and Sunday, to prepare. As the appellant has correctly stated, this Court has ruled that

> [a]n inherent problem arises in a sanction hearing addressed to both a claimant and counsel where, as here, they are not separately represented. A conflict of interest is foreseeable where both client and counsel may be pitted against each other in defending against Rule 1–341 sanctions. At a minimum, a trial court should ... allow a

---

5. From April 10 through May 20, the appellee billed Wife a total of 23.5 hours of discovery at $150 per hour for a total of $3,525 and simply rounded down to the nearest hundred, or $3,500.

reasonable time to each party charged to prepare a defense and obtain separate counsel.

*Needle,* 81 Md.App. at 480, 568 A.2d 856.

As was pointed out by the Master and conceded by the parties, however, the issue of discovery was moot at the time of the hearing on the Motion to Reconsider and Sanctions, and therefore no prejudice attached with respect to the Motion to Reconsider as a result of the court's shortening of time.

The facts in support of the Motion for Sanctions were uncomplicated and required little, if any, research to prepare a defense. Additionally, the following transpired at the sanctions hearing:

THE COURT: I have the appearances for the Defendant and Counter–Plaintiff. All right.

The first matter I want to take up is the matter of continuance. In light of the fact that I worked out with Judge Hyatt his holding you harmless, Mr. Jenkins, until we have completed this proceeding, do you press the motion for continuance?

MR. JENKINS: No, sir. I don't. And I would like to express my appreciation on behalf of you and your chambers in making those arrangements possible.

THE COURT: All right. Would you think it appropriate if you withdrew the motion for continuance?

MR. JENKINS: I would be happy to.

Thus, having withdrawn his motion for a continuance, appellant has waived any objection to the time granted by the lower court. The appellant also asserts that there was no immediacy that required a shortening of time. Because we have found that four days was adequate to allow appellant to prepare his defense to the sanctions motion, no prejudice attached as a result of the order to shorten time. Accordingly, we hold that the trial court did not err in imposing sanctions or in the amount of the award.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.