707 A.2d 427

**August Stydle DEITZ, Jr., et al.**

v.

**Anthony P. PALAIGOS, et al.**

**No. 800, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

April 2, 1998.

Reconsideration Denied April 28, 1998.

Frank E. Turney (John E. Harris, Sr., on the brief), Baltimore, for appellants.

Alvin I. Frederick (James E. Dickerman and Eccleston and Wolf, P.C., on the brief), Baltimore, for appellees Palaigos, Bowden, Blum, Yumkas, Mailman, Gutman & Denick, P.A.

Douglas W. Biser and Mudd, Harrison & Burch, on the brief, Towson, for appellees Edens, Donald Deitz and Promutico.

Argued before SALMON and KENNEY, JJ., and JOHN L. NORTON, III, Judge (Specially Assigned).

SALMON, Judge.

This case originates from the mistakes made in the administration of the estate of August S. Deitz, Sr. (the "decedent") by his son, August S. Deitz, Jr. (Deitz), the estate's personal representative, and by Peter B. Turney (Turney), counsel for the personal representative. Deitz's siblings, who were among the beneficiaries named in the decedent's will, filed a petition in the Orphans' Court for Baltimore County to compel the personal representative and Turney to close the estate and to reimburse them for their attorneys' fees. The orphans' court ruled against the personal representative and Turney, but the exact nature of its ruling is not shown by the record. In any event, the matter was appealed to the circuit court where, in a *de novo* review, Deitz's siblings received a judgment in their favor, in the amount of $15,439.90.

The ensuing complex procedural history will be discussed below in detail, but to summarize briefly, as a result of the judgment, Deitz's wages were garnished at $75.00 per week. When approximately $4,000 had been garnished, Deitz filed a tort action in the Circuit Court for Baltimore County against his siblings (and also against one sibling's husband) and their attorneys, claiming that the defendants had tortiously represented to the circuit court in the garnishment proceeding that the judgment they sought to enforce was against "Deitz, individually," when, according to Deitz, the judgment was against "Deitz" in his representative capacity. John E. Harris, Sr. (Harris) represented Deitz in the tort action.

The circuit court (Hinkel, J.) dismissed Deitz's complaint and granted sanctions against Harris for $12,325.18. Deitz and Harris noted timely appeals, which were docketed as one

action. Appellants present five questions for our review, which we have condensed and rephrased:

1. Did the trial judge err in not allowing Deitz to relitigate the issues of whether the judgments of the circuit court were against him, individually, and whether he, individually, was a party to the underlying suit filed in the orphans' court?

2. Did the trial judge err in dismissing Deitz's complaint for failing to state a cause of action?

3. Did the trial judge err in awarding sanctions against Harris?

## I. FACTS

### A. Background

The decedent's will called for the personal representative to subdivide one of three parcels of real property in the estate. Deitz hired Turney to act as the attorney for the estate. As a result of Deitz's and Turney's unsuccessful attempts at subdividing the parcel, the estate remained open more than five years after the decedent's death. Deitz's three siblings retained Anthony P. Palaigos and Thomas A. Bowden of Blum, Yumkas, Mailman, Gutman & Denick, P.A. (collectively, "Blum, Yumkas") to represent their interests as beneficiaries of the estate.

On March 2, 1992, the siblings filed a petition in the Orphans' Court for Baltimore County to compel "the Personal Representative and his attorney" to close the estate and to reimburse them for their attorneys' fees. Deitz answered the petition as "August S. Deitz, Jr., Personal Representative, by Peter B. Turney, his attorney." The orphans' court granted relief to the siblings. Pursuant to Maryland Code (1974, 1989 Repl.Vol.), section 12–502(a) of the Courts & Judicial Proceedings Article, an appeal was filed in the Circuit Court for Baltimore County.

The circuit court (Bollinger, J.) heard the matter *de novo* during a two-day trial and entered a judgment on April 22,

1993, against the "Personal Representative" and Turney in the amount of $15,439.90. In the first paragraph of the Amended Opinion and Order, Judge Bollinger stated, "Petitioners aver that their brother, August S. Deitz, Jr., Personal Representative of their late father, in concert with the Personal Representative's attorney, Peter B. Turney, Esquire, improperly administered the estate, causing unnecessary legal expenses and unnecessary use of estate funds." The court later stated that it was "convinced that there [was] both a breach of the fiduciary responsibility of the Personal Representative of the estate and his attorney." Judge Bollinger entered judgment against "the Personal Representative and his attorney jointly and severally" for $6,700.00, with interest from March 25, 1993, to reimburse the siblings for additional expenses incurred in attempts to subdivide the property. The siblings had paid Deitz these funds to close the estate, but Deitz had used the $6,700 in order to make additional attempts to subdivide the property even though the orphans' court previously had ordered him to make no further attempts at subdivision. The court also entered judgment against "the Personal Representative" and his attorney for $7,905.00 (with interest) to cover the siblings' attorneys' fees and for $834.90 (with interest) to reimburse the estate "for expenses incurred outside of the fiduciary activity of the Personal Representative and his attorney."

### B. The First Appeal and Its Immediate Aftermath

Upon an appeal to the Court of Special Appeals, a panel of this Court on February 4, 1994, initially affirmed the judgment of the circuit court. Following a motion for reconsideration, however, the Court found, "Although the [lower] court clearly made a finding of both bad faith and a lack of substantial justification as to Mr. Turney, it made no such finding as to Mr. Deitz." *Deitz v. Edens*, No. 918, slip op. at 1 (Md.Ct. Spec.App. May 2, 1994). The Court noted, "This may have been an oversight, for the record indicates that it was Mr. Deitz who was the driving force behind the lack of settlement of the estate, but the omission exists nonetheless." *Id.* It

also stated that the award of attorneys' fees was incorrectly calculated and should have amounted to approximately $4,500. On May 2, 1994, the court vacated the award of $7,905 for attorneys' fees, which the panel said was "[p]art of the judgment entered by the circuit court ... against *August S. Deitz, Jr.* and his attorney." *Id.* at 2 (emphasis added). The Court of Appeals denied *certiorari*. *Deitz v. Edens*, 336 Md. 224, 647 A.2d 444 (1994).

On remand to the circuit court, Judge Bollinger entered a judgment on February 15, 1995, against "the [d]efendant, *August S. Deitz, Jr.* and his attorney, Peter B. Turney, Esquire, jointly and severally," for $4,500.00 in attorneys' fees. (Emphasis added.) To summarize, the $4,500.00 judgment was entered against "Deitz and Turney" and the $7,534.90 judgment (comprised of the $6,700.00 and $834.90 judgments) remained entered against "the Personal Representative and his attorney."

## C. The Second Appeal

Deitz and Turney filed a second appeal to this Court, and, on April 2, 1996, a panel of the Court affirmed the judgment of the circuit court. *Deitz v. Edens*, No. 810, slip op. at 7 (Md.Ct.Spec.App. Apr. 2, 1996). The Court rejected appellants' argument that the circuit court lacked subject matter jurisdiction to enter judgments against them. The panel emphasized that Maryland Code section 12–502(a) of the Courts & Judicial Proceedings Article commands that an appeal from an orphans' court judgment is to be heard *de novo* and that the circuit court is required to " 'give judgment according to the equity of the matter.' " *Deitz*, No. 810, slip op. at 3–4 (quoting § 12–502(a)(1)). With respect to the $6,700.00, the Court stated that Deitz was liable in his individual capacity because Deitz breached his fiduciary duty. *Id.* at 5–6. The panel opined that the "circuit court properly entered judgment against *Deitz and Turney* for failing to comply with the order of the orphans' court [to forego the subdivision of the property and to close the estate]." *Id.* at 7 (emphasis added). Regarding the $834.90, the Court held that this cost

"assessed against *Deitz and Turney* w[as] entitled to be recovered by the prevailing party." *Id.* (emphasis added). Finally, with respect to the $4,500.00, the Court stated that "[i]n view of *Deitz's and Turney's* conduct, the circuit court did not abuse its discretion in *ordering them* to reimburse appellees for attorney's fees." *Id.* (emphasis added).

Deitz also argued in the second appeal that the circuit court did not have personal jurisdiction over him because he was named in the petition to the orphans' court only in his representative capacity. In rejecting this argument, the Court stated that, according to Maryland Rule 2–322(a)(1), the defense of lack of personal jurisdiction must be made before the answer, if an answer is required. *Deitz,* No. 810, slip op. at 8. Because Deitz raised this defense only on the second appeal, the Court concluded it was not preserved for appellate review. *Id.* Subsequently, the Court of Appeals denied Deitz's petition for *certiorari. Deitz v. Edens,* 343 Md. 564, 683 A.2d 177 (1996).

### D. The Bankruptcy Court Proceeding and Its Interplay With the Garnishment Proceeding

Following the April 22, 1993, judgment in the circuit court against "the Personal Representative and his attorney," the siblings filed, in the Circuit Court for Baltimore County, a request for a writ of garnishment against Deitz. The writ was issued on July 14, 1993, but it was revised on May 31, 1995, to reflect the February 15, 1995, $4,500.00 circuit court judgment.

Deitz filed a Chapter 7 bankruptcy petition on August 18, 1993, in the United States Bankruptcy Court for the District of Maryland, which resulted in a stay of the garnishment proceeding. By that point, $300 of Deitz's wages had been garnished. On October 21, 1993, Deitz filed a complaint in the bankruptcy court to recover the wages that already had been garnished. The siblings filed a counterclaim to determine dischargeability of debt ("debt" referred to the three money judgments against "Deitz" for $6,700.00, $834.90, and

$7,905.00). The parties filed cross-motions for summary judgment in the bankruptcy court.

Meanwhile, the stay of the garnishment action was annulled by a bankruptcy court order dated March 17, 1995. Deitz moved to alter or amend this order, claiming that the pleadings in the state court that were referenced in the bankruptcy court's order "contain[ed] no indication that relief was being sought against the debtor [Deitz] individually" and that the amended order of the circuit court entered judgment only against the "Personal Representative." Deitz's motion to amend the stay also alleged:

3. Notwithstanding the above, the order of the state court dated Feb. 15, 1995, purports to enter judgment against "the Defendant, August S. Deitz, Jr."

4. Whether the action was against the debtor as personal representative, or as an individual, is an issue never raised in that state court action. The order of Feb. 15, 1995[,] was entered by the state court, *sua sponte*, without notice, hearing, or opportunity for argument.

5. That same issue has been specifically raised in this court in the debtor's motion for summary judgment, briefed on both sides, and scheduled for argument on May 8, 1995.

The bankruptcy court (Derby, J.) denied Deitz's motion regarding the stay order on April 18, 1995, saying that "it [is] the intent of this court that all issues of liability and extent be made by the State's courts."

About three weeks later, on May 8, 1995, the bankruptcy court (Hill, J.) held a hearing on Deitz's complaint, the siblings' counterclaim, and the cross-motions for summary judgment. The bankruptcy court's Final Judgment on All Claims, entered on May 15, 1995, denied Deitz's motion for summary judgment, and in regard to the siblings' motion, stated that the $6,700.00, $4,500.00,[1] and $836.90 circuit court judgments

---

1. By the time this hearing was held, Judge Bollinger had entered the $4,500 judgment for attorneys' fees against Deitz and Turney, replacing the $7,905 award this Court had vacated.

against *"August S. Deitz, Jr.,"* were not discharged by Deitz's filing for bankruptcy. In making this ruling, Judge Hill, at the hearing on May 8, noted that the state court found that the debtor breached his fiduciary duties, which made the debt nondischargeable under section 523(a)(4) of the United States Bankruptcy Code (defining exceptions to discharge of debts in bankruptcy). Judge Hill's order cited the judgments against *Deitz* in the amounts of $6,700.00 and $836.90 that were contained in the circuit court's April 22, 1993, order and the judgment against *Deitz* in the amount of $4,500.00 that was contained in the February 15, 1995 order, and stated that, under the principles of collateral estoppel, the issue of whether there was a breach of fiduciary duty would not be relitigated. Judge Hill's order also stated, "If the Courts of the state of Maryland modify these orders *to vary the dollar amounts or damages awarded,* then and to that extent, this judgment shall be modified correspondingly without further order of this Court." (Emphasis added.)

The bankruptcy court also dismissed Deitz's complaint and allowed the siblings to "continue, enforce, and perfect the judgments of the state court in accordance with applicable nonbankruptcy state law." On June 9, 1995, Judge Hill denied Deitz's motion to amend the final judgment in which Deitz asserted that "the final judgment is in error to the extent that it authorizes renewal of garnishment proceedings." In so doing, the bankruptcy court's order stated that "[i]nherent in a determination of nondischargeability[,] in the context of a Chapter 7 case, is the ability of the prevailing party to pursue the enforcement of that judgment to the extent provided by applicable nonbankruptcy state law."

Deitz then appealed to the United States District Court for the District of Maryland. In a memorandum opinion dated July 25, 1996, the federal district court (Legg, J.) noted that the state courts found that the debtor breached his fiduciary duties, and "as a result of the state court proceedings, judgments were entered *against the Debtor* and Turney totaling $12,034.90." (Emphasis added.) Judge Legg affirmed the bankruptcy court's decision that the principles of collateral

estoppel applied and that the debts resulting from a breach of fiduciary responsibility were nondischargeable in bankruptcy. On appeal, the Fourth Circuit Court of Appeals, in an unpublished opinion dated June 11, 1997, affirmed the trial court's decision.

### E. Proceedings in the Subject Case

Following the judgment rendered by this Court in Deitz's second appeal, Deitz filed the complaint in the instant case in the Circuit Court for Baltimore County. The complaint was filed on July 10, 1996. At this time, Deitz's motion to amend the final judgment of the bankruptcy court had already been denied, and approximately $4,000 of Deitz's wages had been garnished. Deitz sued Blum, Yumkas and the siblings, including one sibling's husband,[2] alleging abuse of process, libel, "wrongful attachment," "fraud on the part of the creditors," and malicious prosecution. In an amended complaint filed November 27, 1996, Deitz limited his claim to three counts: abuse of process, "wrongful attachment," and conversion. Deitz claimed that the defendants, in obtaining a writ of garnishment against his wages, misrepresented to the circuit court that he, Deitz, was the judgment debtor. Therefore, according to Deitz, the attachment of his wages was improper.

The defendants moved to dismiss Deitz's complaint or, in the alternative, to grant summary judgment in their favor because, among other reasons, (1) his claim was barred by the doctrines of *res judicata,* collateral estoppel, and collateral attack because the Court of Special Appeals, as well as the bankruptcy court, had already determined that the judgments were against Deitz individually, and (2) Deitz's complaint did not state a cause of action.

Deitz opposed the defendants' motion by asserting that (1) he was not a party to the siblings' petition in the orphans'

---

**2.** Although the husband was not a party to the petition the siblings filed in the orphans' court, or in the circuit court proceedings, according to Deitz's complaint, Palaigos was acting as the husband's attorney throughout that litigation.

court, and (2) the judgment below was against the personal representative. He acknowledged that "[i]f it is decided that the judgment was against [Deitz] as an individual, then he has no cause[s] of action" against any of the defendants in the tort suit.

Following a hearing on December 23, 1996, the circuit court (Hinkel, J.) "dismissed" the complaint on January 3, 1997. Judge Hinkel opined that the "underlying issue of individual liability has already been decided adversely to the plaintiff by the Court of Special Appeals." Deitz's motion to alter or amend the judgment was denied on February 3, 1997. Deitz noted a timely appeal.

On January 29, 1997, Blum, Yumkas moved for sanctions against Deitz for filing and maintaining this action "without substantial justification and with bad faith." [3] Blum, Yumkas claimed that Deitz sought to relitigate issues he consistently had lost in the prior case, and therefore, the suit was barred by *res judicata*, collateral estoppel, and collateral attack. Moreover, according to Blum, Yumkas, each of the individual counts failed to state a cause of action. Following a hearing on May 12, 1997, at which time the defendants argued for sanctions against both Deitz and Harris, Judge Hinkel granted sanctions in the amount of $12,325.18 against Harris. He denied sanctions against Deitz.

Although Judge Hinkel agreed with Deitz's premise that he had been sued in his representative capacity and not individually, the judge noted that whether this argument was correct made no difference. Judge Hinkel held that the claim was brought without substantial justification because after this Court's decision of April 2, 1996, there was "in place a judgment of the Circuit Court for Baltimore County against August Deitz and Peter Turney individually and jointly and severally. But individually. That's the law of that case. *Cert[iorari* ] was denied."

---

3. The other defendants later joined in this motion.

Judge Hinkel continued, "Even if you believe that [Judge] Bollinger and the Court of Special Appeals [were] wrong and the Court of Appeals was wrong in denying cert[iorari], even if you believe all of that, there's still a *valid* judgment upon which a judgment creditor can exercise his post judgment rights." (Emphasis added.) According to the trial judge, Deitz's attorney, Harris, knew these facts before he filed suit and therefore lacked substantial justification in bringing this action.

## II. STANDARD OF REVIEW

■ Maryland Rule 2–322(c) provides, in pertinent part:

If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 2–501 . . . .

Notwithstanding the fact that the trial judge's order granted a "motion to dismiss," the trial judge looked outside the four corners of the complaint and relied upon the determinations made by this Court in the prior action. Therefore, we will treat the trial judge's order as one granting summary judgment. *See Pope v. Board of School Comm'rs,* 106 Md.App. 578, 590, 665 A.2d 713 (1995), *cert. denied,* 342 Md. 116, 673 A.2d 707 (1996); *Hrehorovich v. Harbor Hospital Ctr., Inc.,* 93 Md.App. 772, 782–83, 614 A.2d 1021 (1992), *cert. denied,* 330 Md. 319, 624 A.2d 490 (1993).

Under Rule 2–501(e):

The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

The trial court's function on a motion for summary judgment is to assess whether the parties disagree as to any material facts. If such disagreement exists, summary judgment is inappropriate. When determining whether a factual dispute

exists, all facts, and inferences reasonably drawn therefrom, must be viewed in a light most favorable to the party opposing summary judgment. *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985). We will affirm an order granting a motion for summary judgment if there are no material issues in contention and if the trial court was legally correct in granting the motion. *Beatty v. Trailmaster Prods., Inc.,* 330 Md. 726, 737, 625 A.2d 1005 (1993); *Maryland Cas. Co. v. Lorkovic,* 100 Md.App. 333, 354, 641 A.2d 924 (1994).

## III. THE GRANT OF SUMMARY JUDGMENT

Deitz's main contention is that his wages were wrongfully attached because he was not made a party to the siblings' petition in the orphans' court. Therefore, according to Deitz, the circuit court, on appeal from the orphans' court or on remand from the Court of Special Appeals, did not have jurisdiction to enter any judgment against him individually. Deitz concludes by stating that the circuit court not only *did not* enter judgments against him individually, but given the fact that he was not a party to the action and that the circuit court did not have jurisdiction over him individually, the court *could not* enter personal judgments against him. Deitz correctly notes that "to sustain a decision for the defendants it must be demonstrated that some court having jurisdiction over Deitz[,] the individual[,] made the decision that he was individually liable per the judgments of April 22, 1993[,] now for $7,534.90, and February 15, 1995, for $4,500.00 in bad faith counsel fees." We hold that the defendants did make such a demonstration.[4]

---

4. Although we reach the same result as the trial court, we do so taking a different route. "Ordinarily, an appellate court will not affirm a summary judgment by ruling on a ground not ruled upon by the trial court." *Thomas v. City of Annapolis,* 113 Md.App. 440, 450, 688 A.2d 448 (1997); *see also Gresser v. Anne Arundel County,* —— Md. ——, ——, —— A.2d —— (No. 20, Sept. Term, 1997, slip op. at 9, filed Jan. 28, 1998). "If the alternative ground is one as to which the trial court had no discretion, however, summary judgment may be affirmed." *Thomas,* 113 Md.App. at 450, 688 A.2d 448; *see also Maryland Cas. Co.,* 100 Md.App. at 357–58, 641 A.2d 924 (holding that if the trial court would

 Two closely related issues are presented in this case— (1) whether the circuit court judgments were rendered against Deitz, the individual, and (2) whether Deitz, in his individual capacity, was a party to the action brought by his siblings. The bankruptcy court, a court clearly having personal jurisdiction over Deitz, the individual, determined both issues adversely to Deitz, and as such, Deitz is collaterally estopped from relitigating these matters.[5]

 Under the doctrine of collateral estoppel, " '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.' " *Murray Int'l Freight Corp. v. Graham*, 315 Md. 543, 547, 555 A.2d 502 (1989) (quoting Restatement (Second) of Judgments § 27 (1982) [hereinafter Restatement] ). Stated another way, the principal elements of the doctrine require that:

(1) there was a final judgment on the merits in the prior litigation;

(2) the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior litigation;

(3) the issue decided in the prior litigation is identical with the issue presented in the subsequent litigation;

(4) the issue actually litigated was essential to the judgment in the prior action.

---

have had no discretion to deny summary judgment on an alternative ground, the appellate court can, on that alternative ground, sustain the order granting summary judgment).

In this case, the trial judge would have had no discretion to deny summary judgment on the ground that forms the basis for our holding. This ground was raised by appellees below. Accordingly, we affirm on a ground not relied upon by Judge Hinkel.

5. Decisions from a bankruptcy court are entitled to preclusive effect. *See, e.g., Klein v. Whitehead*, 40 Md.App. 1, 17, 389 A.2d 374 (1978); 46 Am.Jur.2d *Judgments* § 573 (1995).

*See Pope,* 106 Md.App. at 594, 665 A.2d 713 (1995) (citing *MPC, Inc. v. Kenny,* 279 Md. 29, 35, 367 A.2d 486 (1977), and *Graham,* 315 Md. at 550–52, 555 A.2d 502); *see also Esslinger v. Baltimore City,* 95 Md.App. 607, 627, 622 A.2d 774, *cert. denied,* 331 Md. 479, 628 A.2d 1066 (1993); *Subsequent Injury Fund v. Ehrman,* 89 Md.App. 741, 758, 599 A.2d 875 (1992). Additionally, the party against whom the doctrine is asserted must have been given a fair opportunity to appeal the judgment in the prior action. *See Pope,* 106 Md.App. at 594–95, 665 A.2d 713; *see also* Restatement § 28(1) (citing this element as an exception to the availability of the collateral estoppel doctrine).

### A. Judgment against Deitz, Individually

■ The first three elements of collateral estoppel are met easily in the instant case. There is no question that the judgment of the bankruptcy court was a final judgment on the merits. *See* Restatement § 13 (defining "final judgment" for purposes of collateral estoppel as including "any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect"). Regarding the element requiring an identity of the party against whom collateral estoppel is applied, Deitz was undeniably a party in his individual capacity in the bankruptcy proceeding, and he is a party in the instant suit in the same capacity. Furthermore, the issue of whether Deitz was found individually liable, which Deitz raises in the subject case, is the same issue that was addressed by the bankruptcy court.

■ In this case, meeting the fourth element, that the issue was actually litigated and essential to the judgment, is more complex. In arguing to the bankruptcy court that summary judgment should be granted in his favor and that the siblings' motion should be denied, Deitz contended that the siblings had no right to attach his bank account because the judgments were not against him personally. This issue was decided against him when the bankruptcy court denied his motion on May 15, 1995, and granted summary judgment in favor of the siblings. An issue determined in a grant of summary judg-

ment is considered "actually litigated" for purposes of collateral estoppel. *See Maryland Auto. Ins. Fund v. Soffas,* 89 Md.App. 663, 671, 599 A.2d 837 (1991); *see also* Restatement § 27 cmt. d.

Judge Hill's Final Judgment on All Claims stated the judgments in the amounts of $6,700.00 and $836.90 that were contained in the circuit court's April 22, 1993, order were against *Deitz* and the judgment in the amount of $4,500.00 that was contained in the February 15, 1995, circuit court order was also against *Deitz.* Judge Hill relied on the doctrine of collateral estoppel to hold that the issue of individual liability had already been decided against Deitz, and Deitz was not permitted to relitigate the issue in the bankruptcy court. In other words, the bankruptcy court relied on the determinations made by the circuit court and interpreted the circuit court decisions as holding Deitz individually liable. According to the Restatement, "[w]hen an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this [s]ection." Restatement § 27 cmt. d. The resolution of the issue using the doctrine of collateral estoppel meets this definition of actual litigation.

Deitz's individual liability was not only actually litigated, but its determination was also essential to the judgment. The judgment of the bankruptcy court could not have been rendered without deciding the issue of Deitz's individual liability. *See Graham,* 315 Md. at 550, 555 A.2d 502. That is, the bankruptcy court could not have held that Deitz's wages could be attached to satisfy the circuit court money judgments if the bankruptcy court adopted Deitz's position that the circuit court judgments were against Deitz but only in his representative capacity.

Lastly, Deitz had the opportunity to appeal the judgment of the bankruptcy court, as well as the judgments of the circuit court. He took that opportunity and lost.

### B. Deitz, Individually, as a Party to the Underlying Action

In this appeal, Deitz claims that he was not, as an individual, a party to the orphans' court action. We hold that this claim is barred. Contrary to Deitz's assertion, the issue of his party status was actually litigated in the bankruptcy court. In Deitz's motion to alter or amend the stay order, filed in the bankruptcy court, he judicially admitted that the issue of "[w]hether the action was against the debtor as personal representative, or as an individual" was "specifically raised in ... the debtor's motion for summary judgment, briefed on both sides, and scheduled for argument on May 8, 1995." The identical issue is now raised by Deitz in this litigation. The bankruptcy court rejected Deitz's argument when, on May 15, 1995, it denied Deitz's motion for summary judgment and granted the siblings' motion. *See generally Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 256, (D.C.Cir.1992) (holding that issue preclusion extends to a matter that the court "must necessarily, albeit implicitly," have decided), *cert. denied*, 506 U.S. 1078, 113 S.Ct. 1044, 122 L.Ed.2d 353 (1993). Regardless of whether the bankruptcy court was right or wrong in its determination, because that court rejected Deitz's argument that he was not a party to the siblings' action, the doctrine of collateral estoppel prevents him from relitigating the issue in this civil suit. *See Cassidy v. Board of Educ.*, 316 Md. 50, 64, 557 A.2d 227 (1989) (stating the general rule that if the court in the earlier proceeding had jurisdiction over the subject matter and the parties an erroneous judgment will not prevent that judgment from barring relitigation).

In summary, a court with jurisdiction over Deitz, the individual, determined the two issues raised by Deitz. The bankruptcy court determined that he was a party to the siblings' action and that he was individually liable for the three money judgments that had been entered during the proceedings following his appeal of the orphans' court judgment. These determinations were essential to the bankruptcy court's final judgment against Deitz. Deitz, a party to the prior litigation

in the bankruptcy court, is estopped from relitigating these issues in his tort suit.

## IV. DEITZ'S CAUSES OF ACTION

■ The trial judge held that Deitz could not state a cause of action for abuse of process, "wrongful attachment," and conversion against appellees. All three causes of action hinged on whether appellant could prove in the tort suit that appellees had no right to attach his wages because the siblings had no valid judgment against him individually. For reasons spelled out above, the collateral estoppel doctrine prevented Deitz from proving that element of the causes of action. The trial judge, therefore, did not err in "dismissing" Deitz's complaint.

## V. SANCTIONS AGAINST HARRIS

### A. Standard of Review

Maryland Rule 1–341 provides:

In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or *without substantial justification* the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.

(Emphasis added.)

■ To be substantially justified, the legal position taken must be "fairly debatable." *Newman v. Reilly*, 314 Md. 364, 381, 550 A.2d 959 (1988); *see also Major v. First Va. Bank–Central Md.*, 97 Md.App. 520, 531, 631 A.2d 127, *cert. denied*, 331 Md. 480, 628 A.2d 1067 (1993), *and cert. denied*, 334 Md. 18, 637 A.2d 1191 (1994); *Johnson v. Baker*, 84 Md.App. 521, 529, 581 A.2d 48 (1990), *cert. denied*, 322 Md. 131, 586 A.2d 13 (1991). We review the imposition of sanctions by first examining whether the circuit court's finding of lack of substantial justification was "clearly erroneous" or involved an erroneous application of law. *Inlet Assocs. v.*

*Harrison Inn Inlet, Inc.,* 324 Md. 254, 267, 596 A.2d 1049 (1991). If this finding was not erroneous, we will reverse the trial judge's imposition of attorneys' fees based on this finding only if the trial judge abused his discretion in so doing. *Id.* at 268, 596 A.2d 1049.

### B. Lack of Substantial Justification

The trial judge ruled that Harris "totally" lacked "substantial justification for the filing of the suit." Although he noted that there was "nothing in [the orphans' court] case that indicates that August Deitz was initially sued in anything other than his representative capacity, as personal representative," he nevertheless concluded that this circumstance was irrelevant once the Court of Special Appeals rendered its decision on April 2, 1996. He also opined that "it was clear to anybody at the time the suit was filed that there was a valid judgment in place."

To make a judgment *valid* against an individual, more is needed than merely a judgment against that individual. In its April 2, 1996, opinion, a panel of this Court stated that Deitz was too late in raising his defense that the circuit court lacked personal jurisdiction over him, individually.[6] The law in Maryland is that "the principles of *res judicata* [claim preclusion and issue preclusion] apply to a jurisdictional question when that question has actually been raised, litigated and determined in favor of jurisdiction." *Tucker v. Tucker,* 35 Md.App. 710, 713, 373 A.2d 16 (1977). What is not firmly established is what rule applies when a question, raised for the first time on appeal, is not answered on the merits because it is deemed to have been waived due to a failure to present the issue below at the appropriate time. Given this situation, we

---

6. We believe the panel was wrong as to the waiver issue. If Deitz was right in his contention that he was not named as a party defendant in the lower court, he scarcely could have been expected to file, prior to his answer, a motion to dismiss for lack of personal jurisdiction against him. Deitz, apparently, was not even aware that a judgment might be entered against him individually until February 15, 1995, when the trial court did so *sua sponte.*

agree with Harris that, based on Deitz's second appeal to this Court (but excluding the effect of the proceedings in the bankruptcy court), the issue of whether he was a party to the siblings' suit, and whether the orphans' court or the circuit court had personal jurisdiction over him, as an individual, was still "fairly debatable." Sanctions should not have been meted out against Harris for his failure to appreciate the possible preclusive effect of the decision by this Court.

Nevertheless, in the trial judge's discretion, the lower court could have considered sanctions for two other reasons, not involving the preclusive effect of the opinion of this Court, *viz:* (1) the preclusive effect of orders of the bankruptcy court proceeding, and (2) the failure of several counts in the complaint to state a cause of action even if appellants could have shown that the circuit court judgments were not against Deitz personally.[7] Because sanctions were not awarded on those grounds, we remand the case so that the trial court can consider an award of sanctions on these grounds.[8]

## C. Calculation of Sanctions

The appellees' motion for sanctions was made not against Harris but against Deitz, his client. The first time

---

**7.** In their motion for sanctions, the appellees raised the arguments of the preclusive effect of the bankruptcy court proceeding and the independent deficiencies of some of the counts alleged in Deitz's initial and amended complaints.

**8.** When reconsidering this matter, the trial court should bear in mind that Rule 1–341 is not intended to punish a party or counsel for making colorable claims, *Yamaner v. Orkin,* 313 Md. 508, 516, 545 A.2d 1345 (1988) (citations omitted); *Beery v. Maryland Med. Lab., Inc.,* 89 Md. App. 81, 100–02, 597 A.2d 516 (1991), *cert. denied,* 325 Md. 329, 600 A.2d 850 (1992); *Johnson,* 84 Md.App. at 528, 581 A.2d 48, and that sanctions are: (1) "an extraordinary remedy," *Seney v. Seney,* 97 Md.App. 544, 549, 631 A.2d 139 (1993); (2) "reserved for the rare and exceptional case," *Black v. Fox Hills N. Community Ass'n,* 90 Md.App. 75, 83, 599 A.2d 1228, *cert. denied,* 326 Md. 177, 604 A.2d 444 (1992); and (3) intended to reach "intentional conduct," *Talley v. Talley,* 317 Md. 428, 564 A.2d 777 (1989). *See also Blitz v. Beth Isaac Adas Israel Congregation,* 115 Md.App. 460, 488, 694 A.2d 107, *cert. granted,* 347 Md. 155, 699 A.2d 1169 (1997); *Major,* 97 Md.App. at 530–31, 631 A.2d 127.

anyone asked for sanctions against Harris was on the morning of the sanctions hearing when appellees' counsel, in oral argument, made such a request. A part of the sanctions leveled against Harris was for opposing sanctions. Such an award was improper. It cannot be said that Harris lacked substantial justification in opposing sanctions against his client, Deitz, when he successfully opposed them. *See U.S. Health, Inc. v. State,* 87 Md.App. 116, 132, 589 A.2d 485 (holding that Rule 1–341 "does not provide for expenses incurred in asserting the claim [for sanctions] under the rule except, perhaps, to the extent that the offending party resists the claim for counsel fees without substantial justification for doing so"), *cert. denied,* 324 Md. 69, 595 A.2d 482 (1991).

**JUDGMENT AGAINST APPELLANT HARRIS REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION;**

**JUDGMENT OTHERWISE AFFIRMED;**

**COSTS TO BE PAID SEVENTY–FIVE PERCENT BY APPELLANT DEITZ AND TWENTY–FIVE PERCENT BY APPELLEES.**